UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE FIERRO, | Case No. 1:22-cv-00982-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 16). |
| Defendants. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits and supplemental security income. (ECF No. 1). The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff presents the following issues: 1) Whether the ALJ properly evaluated the medical opinions of Dr. Mariano and Dr. Kim; 2) Whether the ALJ properly evaluated Plaintiff's symptom allegations; 3) Whether the ALJ's residual function capacity finding was supported by substantial evidence; 4) Whether the ALJ's step five finding was supported by substantial

1

evidence. (ECF No. 16, p. 13).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I.    ANALYSIS

### A.    Medical Opinions

Because Plaintiff applied for benefits in July 2019 (A.R. 12), certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source. . .and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted). As provided by the regulations,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.

*Id.* at 791-92 (internal citations omitted).

Keeping these standards in mind, the Court now considers whether the ALJ provided legally sufficient reasons when evaluating the opinions of Dr. Mariano and Dr. Kim regarding the

degree of limitation caused by Plaintiff's impairments.

### 1. *Dr. Mariano's opinion*

Plaintiff first challenges the ALJ's evaluation of the medical opinion of Plaintiff's treating physician, Romeo Mariano, M.D.--specifically, Dr. Mariano's opinion that Plaintiff is markedly limited in all four functional areas due to her mental health impairments, and that Plaintiff has a "poor ability" to understand, remember, and carry out complex instructions or perform activities within a schedule or maintain regular attendance. (ECF No. 16, pp. 15-18).

The ALJ discussed Dr. Mariano's opinion as follows:

> A mental disorder questionnaire by Dr. Romeo Mariano from Kings View was recently completed (Exhibit 11F, pp. 6-9). The form indicates diagnoses of major depressive disorder, generalized anxiety disorder, panic disorder, and borderline personality (Exhibit 1F, p. 6). It indicates mental status exam showed the claimant was well groomed, had normal motor activity, normal speech, cooperative behavior, and no behavior disturbance (Exhibit 11F, p. 6). The claimant was fully oriented, with intact concentration, impaired memory, and difficulty staying on task and in completing tasks (Exhibit 11F, p. 6). The form notes anxiety and depression, but appropriate affect, goal directed thought processes, no delusions or preoccupations, intact judgement, and no current substance use (Exhibit 11F, p. 7). However, Dr. Mariano noted alcohol and drug use in the past six months (Exhibit 11F, p. 7). This form also notes that the treatment was partially effective, but the claimant does not follow treatment plans (Exhibit 11F, p. 8). In a check box part of the form, Dr. Mariano notes poor ability to understand, remember, and carry out complex instructions and performing activities within a schedule and maintain regular attendance (Exhibit 11F, p. 8). He indicated otherwise fair ability to function in all other areas of mental functioning, but he did not specify what this limitation means (Exhibit 11F, p. 8). The definition of fair indicated in this form is "supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described (Exhibit 11F, p. 8). He also opined that the claimant was capable of managing her own funds (Exhibit 11F, p. 9).
>
> Dr. Mariano also wrote a letter dated September 15, 2020, noting that the claimant's mental illness substantially limited on or more major life activities and met the definition of disability under the Americans with Disabilities Act, the fair Housing Act, and the Rehabilitation Act of 1973 (Exhibit 6F, p. 3). He also indicated that an Emotional Support Animal was necessary to her mental health (Exhibit 6F, p. 3). He cited rules that would allow the claimant to have a support animal, exempting her form any pet policy from a landlord (Exhibit 6F, p. 3).
>
> The undersigned has also considered notations or marked limits in most areas of mental functioning in the treatment records (Exhibit 5F, p. 8).
>
> The undersigned finds that while these opinions are based upon a treating relationship, the overall record does not confirm consistent reports of symptoms

3

> that clearly support these findings. While the record does suggest on-going treatment, improvement in [sic] noted (Exhibit 19F, p. 13), and [sic] symptoms do not consistently reflect panic or depression to support greater limits than those noted by Dr. Kim at Exhibit 7F).

(A.R. 20-21).

Plaintiff argues that "the ALJ did not properly evaluate the medical opinions from Dr. Mariano because the ALJ did not state how persuasive he found the opinions; the ALJ cited to a non-existent exhibit to prove the medical opinions were not consistent with other medical evidence; the ALJ mischaracterized Plaintiff's continued symptom reports; and the ALJ did not consider the supportability factor." (ECF No. 16, at p. 18).

Regarding the first argument, the Court finds that the ALJ explained how persuasive he found Dr. Mariano's opinion, even if he did not use the word "persuasive." The relevant regulations state "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b); 416.920c(b). The Commissioner argues that the "it can be easily inferred from the decision that the ALJ found Dr. Mariano's opinion not persuasive, and the ALJ's omission of any "magic words" does not establish error." (ECF No. 18, p. 21) (citing *Woods*, 32 F.4th at 793; *Magallenes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)). The Court agrees, and finds that it is clear from the ALJ's decision that he rejected Dr. Mariano's opinions regarding the extent of Plaintiff's mental limitations. The reasons why the ALJ rejected Dr. Mariano's opinion are also clear. The ALJ thus adequately explained how persuasive he found Dr. Mariano's opinion, even though he did not use the term "persuasive."

Regarding the second argument, the Court finds that the incorrect citation to an exhibit was harmless error. The relevant part of the ALJ's opinion states:

> The undersigned finds that while these opinions are based upon a treating relationship, the overall record does not confirm consistent reports of symptoms that clearly support these findings. While the record does suggest on-going treatment, improvement in noted (Exhibit 19F, p. 13), and symptoms do not consistently reflect panic or depression to support greater limits than those noted by Dr. Kim at Exhibit 7F).

(A.R. 20-21). Plaintiff is correct that there is no Exhibit 19F and thus this citation appears to be an error. However, the ALJ also included correct citations to other parts of the record which

indicated effective treatment through medicine and therapy. (A.R. 18 (citing A.R. 452); A.R. 19 (citing A.R. 787)). Moreover, as the ALJ noted, Dr. Mariano himself indicated that "treatment was partially effective, but the claimant does not follow treatment plans." (A.R. 20) (citing A.R. 813).

Regarding the third argument, that the ALJ mischaracterized Plaintiff's continued symptom reports by stating that "symptoms do not consistently reflect panic or depression," the Court finds that the ALJ's opinion is supported by substantial evidence. Although Plaintiff points to examination findings over time reporting panic or depression, the ALJ is correct when he explained elsewhere in the opinion that "exams indicated normal findings, except for depressed mood (Exhibit 2F, p. 69, 61, 52 80, 100). The claimant reported that Xanax was effective for her anxiety and Effexor was better than her previous treatment (Exhibit 2F, p. 65)." (A.R. 18) (citing A.R. 452 ["EFFEXOR: "seems better than" her previous treatment. Mood is not as depressed."]; A.R. 487 ["GENERAL APPEARANCE AND BEHAVIOR: Casually dressed. Fair personal hygiene. No motor abnormality. Calm. Cooperative. Friendly in manner. SPEECH AND THOUGHT PROCESS: Normal rate. Normal volume. Normal rhythm. Normal prosody. Normal latency of response. Well-organized. Goal directed."]). (*See also* A.R. 456 (noting normal mental status examination findings aside from anxious mood in January 2019); A.R. 439 (noting normal mental status examination findings aside from anxious mood in March 2019); A.R. 467 (noting normal mental status examination findings aside from depressed mood in December 2018); A.R. 487 (noting same in August 2018)). To the extent that Plaintiff advocates for a different interpretation of the record, the ALJ's determination was reasonable and thus it must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Regarding the fourth argument, although the ALJ did not use the word "supportability," the ALJ's reasons addressed this factor by assessing how well Dr. Mariano explained his opinion as to Plaintiff's mental health limitations as reflected in the questionnaire and the treatment notes.[1] The ALJ noted that the check-box form filled out by Dr. Mariano does not further describe

---

[1] As the Court finds that the ALJ adequately addressed the supportability factor, the Court does not address Defendant's legal argument that the Court may affirm based solely on the ALJ's consistency finding.

or specify the degree or extent to which Plaintiff is fairly limited in various areas. (A.R. 20) (citing A.R. 814). The ALJ also noted that Dr. Mariano described Plaintiff having a "fair ability to function in all other areas of mental functioning" but "did not specify what this limitation means." (*Id.*) Further, the ALJ discussed how Dr. Mariano's own exam indicated that Plaintiff was well groomed, exhibited normal speech, cognitive behavior, orientation, intact concentration, goal directed thought processes, and intact judgment. (A.R. 20) (citing to A.R. 811-12). The ALJ also noted how Dr. Mariano found Plaintiff capable of managing her own funds. (A.R. 20) (citing to A.R. 813). Moreover, in discussing Plaintiff's medical record, the ALJ cited to mental status exams performed by Dr. Mariano in December 2018, January 2019, and March 2019, which the ALJ noted as indicating "normal findings." (A.R. 18) (citing to A.R. 456, 448, 448, 439, 467, 487). These statements were adequate to satisfy the ALJ's requirement to address the supportability factor in evaluating Dr. Mariano's opinion.

Accordingly, the ALJ did not err in discounting Dr. Mariano's opinion as to Plaintiff's mental health limitations.

### *2.  Dr. Kim's opinion*

Plaintiff also challenges the ALJ's evaluation of the medical opinion of state consultative examiner, Michael Kim, M.D. (ECF No. 16, pp. 18- 22). Plaintiff argues that "the ALJ did not properly evaluate the medical opinions from Dr. Kim because the ALJ did not adopt Dr. Kim's opinions or explain why he did not adopt the opinions; the ALJ did not explicitly state how persuasive he found the opinions; and the ALJ did not properly consider the consistency factor." (ECF No. 16, at p. 22).

The ALJ stated as follows regarding Dr. Kim's opinion:

> Psychiatrist Michael Kim, MD consultatively examined the claimant in November of 2020 (Exhibit 7F, pp. 1-11). The claimant reported depression since she was a teenager, anxiety in social situations and in public, and a history of trauma (Exhibit 7F, p. 3). Her medications included Klonopin, Oxcabazepine, Iron, Vitamin D, Lovetiracetam, Folic Acid, Hydrocortisone, Depakote, Ambien, Effexor, and Albuterol (Exhibit 7F, p. 4). She admitted to daily meth use for six years, with her last use in 2015 (Exhibit 7F, p. 4). She reported last working in 2015 and living in a group home at the time of the exam (Exhibit 7F, p. 5). The claimant presented as alert, oriented, and in no acute distress (Exhibit 7F, p, p. 5). Her behavior, speech, and motor activity were normal, her mood was anxious, and she had good insight, judgement, impulse control, and future orientation (Exhibit 7F, pp. 5-6). Her

> memory, level of alertness, intellect, and concentration were within normal limits (Exhibit 7F, p. 6). She was able to recall three out of three objects and two out of three objects after five minutes (Exhibit 7F, p. 6). She was able to do serial sevens and serial threes, and she was able to spell the word music/world forward and backward (Exhibit 7F, p. 6). She was able to recognize similarities and differences in objects and interpret multiple proverbs (Exhibit 7F, pp. 6-7). Dr. Kim diagnosed unspecified anxiety disorder, and he opined the claimant was not limited in her ability to follow simple oral and written instructions, as well as detailed instructions, in daily activities and in responding to changes in a routine work setting (Exhibit 7F, p. 7). He did opine that the claimant was mildly limited in her ability to comply with job rules such as safety and attendance and respond to work pressure in a usual work setting; and was moderately limited in her ability to interact appropriately with the public, coworkers, and supervisors (Exhibit 7F, p. 7). He noted that she appeared competent to manage her own funds (Exhibit 7F, p. 8). The undersigned finds that this opinion is consistent with and supported by the overall record. He finds that the overall records supports limits on exposure to others based upon the claimant's mental symptoms and tendency to isolate. However, the claimant should be able to perform at least simple, routine tasks based upon this report and opinion, as well as the mostly normal mental status examinations indicated in the record, and the claimant's presentation at the hearing.

(A.R. 19-20).

Regarding the first argument, that the ALJ did not explain why he failed to adopt the mild limitations in Plaintiff's ability to comply with job rules and respond to work pressure, it is not legal error to fail to address every limitation in an opinion. *Dylan S. v. Kijakazi*, No. 2:22-CV-01139-DJA, 2023 WL 5846288, at *6 (D. Nev., Sept. 8, 2023) ("And just because the ALJ found Dr. Kaur's opinion to be somewhat persuasive did not mean that the ALJ was required to adopt each and every assessment in that opinion."); *Shaylene M. H. v. Kijakazi*, No. 5:22-CV-0987-JC, 2023 WL 4912141, at *5 (C.D. Cal., July 31, 2023) ("But an ALJ is neither required to discuss every piece of evidence nor every word or limitation in an opinion."); *Alvarez v. Comm'r of Soc. Sec.*, No. 1:21-cv-00601-EPG, 2022 WL 2359322, at *3 (E.D. Cal. June 29, 2022) ("While the ALJ did not detail which opined limitations were somewhat persuasive and which were not – a fact Plaintiff criticizes – the ALJ was not required to perform a function-by-function analysis, nor address each work-related restriction identified in the record so long as the RFC is otherwise supported by substantial evidence.") (citation and internal quotations marks omitted); *Charlene J. R. v. Kijakazi*, No. 5:20-01774 ADS, 2021 WL 5051930, at *4 (C.D. Cal. Oct. 29, 2021) (finding the ALJ was only required to consider the supportability and consistency of an opinion in

determining persuasiveness and not required to provide specific reasons as to why he did not adopt every particular limitation). Here, the ALJ made clear he did not accept all of Dr. Kim's opinion. (A.R. 20) ("However, the claimant should be able to perform at least simple, routine tasks based upon this report and opinion, as well as the mostly normal mental status examinations indicated in the record, and the claimant's presentation at the hearing."). Moreover, the failure to incorporate mild limitations regarding compliance comply with job rules and response to work pressure was supported by substantial evidence, including the medical opinions of State agency medical consultants who did not include such limitations, as well as the mostly normal mental status examinations.[2] (A.R. 19).

Regarding the argument that Dr. Kim failed to explicitly state how persuasive he found the opinions, as before the Court finds that the ALJ's explanation adequately gave his assessment of the opinion's persuasiveness, even without using the word "persuasive."

As to Plaintiff's argument that the ALJ did not properly consider the consistency factor, the Court disagrees and finds that the ALJ's discussion of consistency, albeit brief, was legally sufficient. (A.R. 20) ("The undersigned finds that this opinion is consistent with and supported by the overall record. He finds that the overall records supports limits on exposure to others based upon the claimant's mental symptoms and tendency to isolate. However, the claimant should be able to perform at least simple, routine tasks based upon this report and opinion, as well as the mostly normal mental status examinations indicated in the record, and the claimant's presentation at the hearing.").

**B.     Subjective Symptom Testimony**

Plaintiff next argues that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints and failed to include limitations from those complaints in the RFC. (ECF No. 16, pp. 22- 24).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

---

[2] Defendant also argues that "the Ninth Circuit has expressly held that a limitation to simple, routine tasks captures mild limitations in several mental functional areas." (ECF No. 18, p. 18) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-76 (9th Cir. 2008)). In reply, Plaintiff points to cases where limitations to simple routine tasks were found to not adequately account for limitations in responding to work pressure and maintaining attendance. (ECF No. 19, p. 6). Because the Court finds that the ALJ's RFC is supported by substantial evidence, it need not address whether the limitation to simple, routine tasks accounted for the mild limitations in other areas, as opined by Dr. Kim.

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Here, the ALJ found objective medical evidence of an underlying impairment. (*See* A.R. 17). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ found that Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ discussed Plaintiff's medical record, including Plaintiff's history of seizures and mental health impairments:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the overall record is not consistent with the claimant's testimony during the entire period at issue. As discussed below, the record confirms seizure activity in February 2019 (Exhibit 3F, p. 55) with small breakthrough seizures in July of 2019 (Exhibit 3F, p. 45). Then it appears there is a period of dormancy until February of 2020 (Exhibits 3F; 6F). The claimant seizure activity is more aligned with her testimony in 2020 (Exhibit 8F, p. 41). After this point in time, the record does support seizures approximately every three months (Exhibits 8F, p. 38; 9F, pp. 42, 85). In addition, the record does not clearly corroborate a three-day recovery period following seizures.
>
> The claimant presented to providers in November of 2018 with complaints of slurred speech and right sided weakness, but there was no evidence of abnormality

9

on CT of the head (Exhibit 1F, pp. 11, 13). The claimant was alert, in no acute distress, normal sensation and gait, and normal cerebellar function (Exhibit 1F, p. 13). In January of 2019, the claimant followed up with her provider, complaining that she had a seizure two weeks prior and felt she had some memory loss (Exhibit 3F, p. 65). However, she was alert and oriented, speech and language was intact, and her mood and affect were appropriate (Exhibit 3F, pp. 67-69). She was continued on Keppra and Trileptal and told to follow up in two months (Exhibit 3F, p. 69). The claimant returned to her provider in February of 2019 complaining of atypical syncope (Exhibit 3F, p. 60). The claimant reported no seizure episodes, no weakness, and no numbness, but she felt fidgety (Exhibit 3F, p. 60). Later in February, the claimant reported having a seizure and a panic attack, and a brain MRI showed sinusitis (Exhibit 3F, p. 55). Examination was normal (Exhibit 3F, pp. 58-59). She was told to continue her medication (Exhibit 3F, p. 55).

In July of 2019, the claimant reported that she has several small breakthrough seizures (Exhibits 3F, p. 45; 4F). She told her provider that she was in her recliner, and felt confused for a few minutes (Exhibit 3F, p. 45). Keppra was increased at that time (Exhibit 3F, p. 49).

In February of 2020, the claimant experienced breakthrough seizures, Keppra was increased, and Aptiom was added to her regimen (Exhibit 9F, p. 94). Examination was normal at that time (Exhibit 9F, pp. 93-94). In May of 2020, the claimant reported a seizure one month prior (Exhibit 9F, pp. 48, 85). On June 24, 2020, the claimant reported having a seizure 10 days prior and going to the emergency department (Exhibit 9F, p. 75). However, in July of 2020, she reported her last seizure was on May 13 (Exhibit 9F, p. 70). In August of 2020, the claimant followed up with her provider after an emergency department visit from seizure activity (Exhibit 8F, p. 41). In October 2020, she reported a seizure two months prior, which required an emergency room visit (Exhibit 9F, p. 65).

In December of 2020, she reported leaving the emergency department against medical advice for symptoms related to her pancreas, and her provider told her to return to the emergency department (Exhibit 8F, pp. 38-39). When she returned to the hospital, she reported that her abdominal pain and symptoms had resolved (Exhibit 9F, p. 29).

In January of 2021, she denied any seizure activity (Exhibit 9F, p. 60).

Mental health treatment records indicate symptoms related to major depressive disorder, panic disorder, and borderline personality disorder, that moderately improved with treatment (Exhibit 2F, p. 103). Providers at King's View Behavioral Health noted a GAF of 50, a poor prognosis, that she was unable to work to any extent despite treatment, and she had marked limits in all areas of mental functioning (Exhibits 2F, pp. 39, 72, 103; 5F, p. 8). However, exams indicated normal findings, except for depressed mood (Exhibit 2F, p. 69, 61, 52 80, 100). The claimant reported that Xanax was effective for her anxiety and Effexor was better than her previous treatment (Exhibit 2F, p. 65).

In October of 2020, the claimant vented to her mental health provider about a change in medication that had not worked in the past (Exhibit 10F, p. 11). Upon follow-up the next month, the claimant was feeling better (Exhibit 10F, p. 13). She

> was closer to her children due to Covid, they were spending more time together, and her boyfriend was home from the hospital (Exhibit 10F, p. 13). She was planning to attend church to help with her mental health symptoms, and was also planning to move closer to her boyfriend (Exhibit 10F, p. 13). She was dealing with additional situational stressors at her follow-up and reported that she was stressing and not good (Exhibit 10F, p. 15). In December of 2020, the claimant's medication included Trileptal, Xanax, Iron, Vitamin D2, Keppra, Vitamin B9, Hydrocortisone, Depakote, Zonegran, Effexor XR, and Geodon (Exhibit 10F, pp. 22, 23). Recent records indicate the claimant was positive for anxiety and depression (Exhibit 9F, pp. 16-17).

(A.R. 17-19).

As seen above and elsewhere in the record, the ALJ discounted Plaintiff's subjective complaints, in part, because there was a lack of supporting evidence. For example, Plaintiff testified that she experiences seizures "about once every three months" but that "it takes about three days for [Plaintiff] to go through the whole cycle of trying to recover." (A.R. 42). However, the ALJ noted that the "record does support seizures approximately every three months," but "does not clearly corroborate a three-day recovery period following seizures." (A.R. 17) (citing A.R. 673, 720, 763). While the lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor, and was properly considered here. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Plaintiff argues that the ALJ should have considered evidence that treatment was only partially effective in treating her mental health symptoms. However, the ALJ discussed records indicating "that the treatment was partially effective, but the claimant does not follow treatment plans." (A.R. 20) (citing A.R. 814). Plaintiff's failure to follow treatment plans is a sufficient reason to discount Plaintiff's testimony. *Smolen v. Chater*, 80 F.3d 1237, 1284 (9th Cir. 1996) (an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment").

Further, the ALJ discounted Plaintiff's subjective complaints based on Plaintiff's daily activities. In discussing the paragraph B criteria, the ALJ noted that while Plaintiff testified that she gets confused when following written instructions, evidence on record demonstrates that Plaintiff "shops, can handle her finances, cooks, and cleans." (A.R. 15). As for Plaintiff's

11

allegations related to her ability to interact with others, the ALJ noted that Plaintiff "attends church, talks on the phone, and attends community outreach activities." (A.R. 16). Moreover, it is worth keeping in mind that the ALJ credited Plaintiff's complaints to a certain extent in the RFC, limiting her to "jobs of a noncomplex nature requiring the performance of no more than simple, routine tasks", "occasional contact with supervisors and coworkers," and "no contact with members of the general public." (A.R. 16).

Plaintiff argues that the ALJ failed to consider other relevant evidence, such a third-party function report regarding the Plaintiff's seizures and panic attacks and a note from Plaintiff's therapist about increasing the number of days Plaintiff is able to complete daily tasks in a single week. (ECF No. 16, p. 24). However, Plaintiff does not specifically challenge the ALJ's reasons for discounting the third-party function report or provide any argument that the ALJ erred in considering the third-party function report.

Based on the foregoing, the Court concludes that the ALJ provided legally sufficient reasons to reject Plaintiff's subjective complaints.

### C.     RFC Assessment

Plaintiff next argues that "[t]he ALJ's residual functional capacity finding was not supported because it did not include Plaintiff's functional limitations." (ECF No. 16, at p. 25). Specifically, Plaintiff argues that the RFC failed to include Dr. Kim's limitations regarding compliance with job rules such as safety and attendance and ability to respond to work pressure, and unspecific limitations related to Plaintiff's obesity.

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical

evidence.").

The Court has addressed the ALJ's treatment of Dr. Kim's opinion above, and similarly finds no error in failing to incorporate further limitations given by Dr. Kim in the RFC.

Regarding obesity, the ALJ found Plaintiff's obesity to be non-severe at Step Two, causing "[no] more than [a] minimal restriction in [Plaintiff's] ability to work." (A.R. 15). Plaintiff points to Plaintiff's own complaints on record of chronic back pain and soreness in her legs due to obesity. However, Plaintiff does not identify any medical evidence, beyond the fact that providers recommended weight loss (which the ALJ also noted (*see* A.R. 15)), indicating that she suffered functional limitations due to obesity that would have materially impacted the ALJ's analysis. And while Plaintiff testified at the hearing that her back pain prevented her from working (A.R. 41), Plaintiff did not attribute her back pain to obesity. Thus, the Court finds no legal error in failing to incorporate unspecified limitations associated with Plaintiff's obesity. *See Burch,* 400 F.3d at 683 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. In fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that Burch is obese, and recommended that she participate in a medically supervised weight loss program.").

### D.    Step Five Finding

Plaintiff argues that the ALJ's step five finding is unsubstantiated because the ALJ's hypothetical question to the Vocational Expert ("VE") was less restrictive than the ALJ's RFC assessment. (ECF No. 16, pp. 28- 31). Plaintiff also argues that the VE's testimony was not properly corroborated. (*Id.*, p. 30).

At step five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (alterations in original)). "To aid in making this determination, the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations." *Gutierrez v. Colvin*, 844 F.3d 804, 806-07 (9th Cir. 2016).

13

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, ("RFC"), must account for all of the limitations and restrictions of the particular claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* (citation and quotation marks omitted); *see also Taylor v. Commissioner of Social Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."). Moreover, "[w]hen there is an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT")—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846.

Here, the ALJ's hypothetical question to the VE failed to include all of Plaintiff's non-exertional limitations as identified in the RFC. The relevant hypothetical included a limitation to jobs for an individual who should have no more than occasional contact with coworkers and supervisors. (A.R. 53) ("The individual would be capable of performing jobs of a non-complex nature, which require the performance of no more than simple, routine, tasks, and would be able to maintain occasional contact with co-workers, supervisors, and members of the general public."). However, the RFC further limited Plaintiff to "no contact with members of the general public." (A.R. 16). As a result, the ALJ erred in relying on an incomplete hypothetical to conclude that Plaintiff retained the ability to perform other work. *Matthews v. Shalala,* 10 F.3d 678, 681 (9th Cir.1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'").

Defendant argues that Plaintiff has not demonstrated that the representative jobs identified by the VE (kitchen helper, laundry worker II, and marker II) require any contact with the general

public, and thus, any error was harmless. (ECF No. 18, p. 23). However, the Court will not make such a determination without relevant testimony from the VE.

The Court finds that remand is warranted to determine whether sufficient jobs exist for Plaintiff, including all limitations in the RFC.[3]

### III.     CONCLUSION AND ORDER

For the reasons given, the decision of the Commissioner of the Social Security Administration is REVERSED, in part, and REMANDED in part. On remand, the ALJ shall review whether significant jobs exist in the national economy that Plaintiff can perform despite all of her assessed limitations.

The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   **October 11, 2023**                           /s/ Erica P. Grosjean
                                                                           UNITED STATES MAGISTRATE JUDGE

---

[3] As the Court finds error based on the incomplete hypothetical posed by the ALJ, the Court declines to address Plaintiff's secondary argument that the VE failed to corroborate her testimony.